IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA HEALTHCARE ASSOCIATION, on behalf of its member hospitals,<br><br>    Petitioner,<br><br>  v.<br><br>SANDRA SHEWRY, Director of the California Department of Health Services; and the CALIFORNIA DEPARTMENT OF HEALTH SERVICES,<br><br>    Respondents.<br>_____/ | No. C 06-04027 JSW<br><br>**ORDER GRANTING MOTION TO REMAND** |

Now before the Court is the motion to remand this action to state court filed by Petitioner California Healthcare Association ("CHA"). The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for September 15, 2006 is VACATED. Having carefully reviewed the parties' papers, considered their arguments and the relevant authority, and good cause appearing, the Court hereby GRANTS the CHA's motion to remand.

**BACKGROUND**

CHA originally filed its petition for writ of mandate ("Petition") in the Superior Court of California in the County of San Francisco on June 7, 2006. The Petition seeks to address the way in which the Department of Health Services ("DHS") has been paying hospitals that operate distinct part nursing facilities ("DP/NF") for providing skilled nursing services to beneficiaries of California's Medicaid program, known as MediCal. On July 29, 2006,

Respondents removed this matter under 28 U.S.C. § 1441, citing federal question jurisdiction as the basis for removal. CHA filed a notice of motion to remand on July 28, 2006.

Medicaid was established through passage of Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* The program provides for federal financial assistance to states when they supply medical care to needy individuals. The State of California has elected to participate in the Medicaid program and Respondent DHS is the "single state entity" responsible for implementing and administering the MediCal program for the state. *See* Cal. Welf. & Inst. Code §§ 10740, 14000 *et seq.*; 22 Cal. Code Regs. § 50000 *et seq.*; and 42 U.S.C. § 1396(a)(5).

In order to qualify for federal financial assistance, states that participate in the Medicaid program must comply with certain statutory requirements imposed by the Social Security Act as well as regulations promulgated by the United States Department of Health and Human Services, through the Centers for Medicare and Medicaid Services ("CMS"). Thus, in order to qualify as an approved plan and receive federal funding, each participating state's plan shall:

> Provide such methods and procedures relating to the utilization of, and the payment for, current services available under the plan ... that may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy and quality of care, and are available to enlist enough providers so that the care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

42 U.S.C. § 1396a(a)(30)(A).

According to the Petition, pursuant to the applicable statutes and regulations, DHS submits amendments for its state plan for approval to CMS which provide for MediCal reimbursement rates for DP/NF providers for the next plan rate year. (*See* Writ Petition at ¶ 14.) Prior to July 31, 1995, the approved state plan for DP/NFs provided for a reimbursement rate on the lesser of the facility's costs as projected by DHS or a prospective "median rate." (*Id.* at ¶ 15.) The methodology then used to establish the projected reimbursement rate was based on the historical costs, adjusted for inflation, for each participating facility in the state. The maximum allowable payment rate was then set at the median of all such projected facility rates throughout the state. (*Id.*)

2

1  On September 29, 1995, DHS submitted to CMS an amendment to the plan which intended to reduce the DP/NF reimbursement rate in the 1995-1996 rate year by changing the methodology to exclude those participating providers whose MediCal patient days accounted for less than 20 percent of their total patient days.  (*Id.* at ¶ 16.)  Although CMS notified DHS that it would not approve the amendment, according to the Petition, DHS caused to be filed as an emergency regulation to the California Code of Regulations ("CCR") certain amendments to Title 22, section 51511 which, in effect, incorporated the unapproved methodology for calculating the median rate for DP/NFs into the regulation.  (*Id.* at ¶¶ 17-18.)

On April 23, 1996, CHA filed the first of three actions in California state court challenging the new regulation and the exclusion methodology based on DHS's failure to comply with state and federal law.  (*CHA v. Belshe*, No. 977772.)  Final judgment and a peremptory writ of mandate were entered on June 16, 1999, ordering DHS to set aside the new reimbursement methodology, to recalculate the reimbursement rates for the subject period without excluding those facilities with less than 20 percent MediCal utilization, and to pay CHA's member hospitals any additional reimbursement still owing under the recalculated rates.  (*See* Petition at ¶ 19.)

As a result of Respondents' renewed attempt to apply the 20 percent exclusion methodology for calculating DP/NF reimbursement rates for the 1996-1997 rate year, CHA filed its second California state court action.  (*CHA v. DHS*, No. 312880.)  Final judgment and a peremptory writ of mandate were entered on July 9, 2002, ordering DHS to recalculate and pay the DP/NF rates in conformity with federal requirements.  (*See* Petition at ¶¶ 20-21.)

The Petition here alleges that, despite the fact that the California state courts have twice found the 20 percent exclusion methodology to be unsupported, arbitrary and capricious, DHS has continued to use the same methodology for the rate years 2001-2002, 2002-2003, 2003-2004 and 2004-2005, and the 20 percent exclusion methodology has remained part of 22 C.C.R. § 51511.  The Petition further alleges that DHS has implemented the same methodology for the current 2005-2006 rate year.  (*Id.* at ¶¶ 22-23.)

3

Petitioner, CHA, filed the current and third action in California state court, seeking to challenge the utilization of the 20 percent exclusion methodology (and rate freeze) for the rate years following the last state court judgment, from 2001 through 2005.  CHA asserts that the methodology violates both state and federal law, principally 42 U.S.C. § 1396a(a)(30)(A), because DHS did not provide procedures necessary to assure that payments are consistent with efficiency, economy and quality of care, and sufficient to enlist enough providers to treat MediCal patients at least to the extent that such care is available generally in the same geographic area.

CHA's three causes of action are: (1) to compel DHS to comply with its statutory duties for reimbursement payments under 42 U.S.C. § 1396a(a)(30)(A) and California Civil Code of Procedure § 1085; (2) to obtain declaratory relief to resolve an actual controversy between CHA and DHS concerning their respective rights and duties as to the validity of Title 22 of the Code of California Regulations, Section 51511;  and (3) permanently to enjoin DHS from utilizing the 20 percent exclusion methodology in calculating reimbursement rates.

Respondents removed this action to federal court pursuant to 28 U.S.C. § 1441(b) based on the contention that Petitioner asserts causes of action for violations of federal Medicaid statutes and regulations, including 42 U.S.C. § 1396a(a)(30)(A).

**ANALYSIS**

**A.     Legal Standards Relevant to Removal Jurisdiction.**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation omitted); *see also* 28 U.S.C. § 1441.  However, federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  An action originally filed in state court may be removed to federal court only if the district court could have exercised jurisdiction over such action if initially filed there.  28 U.S.C. § 1441(a);

1  *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).  A district court must remand the case if
2  it appears before final judgment that the court lacks subject matter jurisdiction.  28 U.S.C.
3  § 1447(c).  Accordingly, the burden of establishing federal jurisdiction for purposes of removal
4  is on the party seeking removal.  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir.
5  2004); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  Moreover, a court must
6  construe the removal statute strictly and reject jurisdiction if there is any doubt regarding
7  whether removal was proper.  *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *see also*
8  *Gaus*, 980 F.2d at 566 ("Federal jurisdiction must be rejected if there is any doubt as to the right
9  of removal in the first instance.")

10  "The presence or absence of federal-question jurisdiction is governed by the 'well-
11  pleaded complaint rule.'"  *Caterpillar Inc. v. Williams*, 482 U.S. 382, 392 (1987).  The well-
12  pleaded complaint rule recognizes that the plaintiff is the master of his or her claim.  "[H]e or
13  she may avoid federal jurisdiction by exclusive reliance on state law."  *Id.*  Thus, under the
14  well-pleaded complaint rule, federal-question jurisdiction arises where the "complaint
15  establishes either that federal law creates the cause of action or that the plaintiff's right to relief
16  necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Bd.*,
17  463 U.S. at 27-28.

18  **B.    Jurisdictional Issues for Federal and State Claims Under Medicaid Regulation.**

19  Federal law provides that a civil action begun in state court may be removed if a district
20  court would have original jurisdiction over the action.  28 U.S.C. § 1441(a).  Respondents here
21  contend that this Court has original jurisdiction because the case concerns a federal question.
22  The federal question statute extends federal jurisdiction to "all civil actions arising under the
23  Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  In most cases, the
24  claims arise under federal law because federal law creates the cause of action.  However, claims
25  grounded in state law may invoke the arising under jurisdiction when they present a substantial
26  and disputed question of federal law.  *See Franchise Tax Bd.*, 463 U.S. at 13.

27  Petitioner readily concedes that the "thrust of [its] lawsuit is that the Department's
28  methodology for reimbursing DP/NF providers during the subject fiscal years, as well as the

5

way it was implemented, violates the 'efficiency, economy and quality of care' clause of Section 1396a(a)(30)(A) and is not sufficient to enlist enough providers to care for MediCal patients in a manner equal to the care available to the general public." (Motion at 8.) However, in recent decisional law, the Ninth Circuit has unequivocally determined that 42 U.S.C. § 1396a(a)(30)(A) does not confer a private right of action for enforcement through 42 U.S.C. § 1983 on either Medicaid providers or beneficiaries. *Sanchez v. Johnson*, 416 F.3d 1059-1062 (9th Cir. 2005). In light of this recent decision, Petitioner contends that it would have been fruitless to pursue this action originally in federal court and therefore removal was improper. Petitioner argues that because the claim for enforcement of the federal Medicaid statute does not give rise to a federal cause of action, Petitioner could not have originally filed this action in federal court. On this basis, Petitioner contends that this Court does not have removal jurisdiction.

Further, while federal law prevents the federal courts from granting relief to parties to enforce the provision of the Medicaid law at issue here, California state courts do not create a bar to such a private right of enforcement. Under Section 1085 of the California Code of Civil Procedure, a private party may petition for a writ of mandate to compel performance of an act which the federal Medicaid laws and regulations specifically enjoin. *See Doctor's Med. Lab., Inc. v. Connell*, 69 Cal. App. 4th 891, 896 (1999); *see also RCJ Medical Services, Inc. v. Bonta*, 91 Cal. App. 4th 986, 1003 (2001) (distinguishing between federal decisional law limiting the rights of providers in federal court from the state decisional law and statutory authority permitting a private party to enforce federal law under California's writ of mandate proceedings in state court).

Petitioner also relies on the Supreme Court's decision in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986), in which the Court held that a complaint alleging a violation of a federal statute as an element of a state claim was not sufficient to invoke federal jurisdiction where the federal statute did not confer a private right of action. The *Merrell Dow* Court stated that "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Id.* at 810. In this regard, the

6

Court considered the lack of a private right of action particularly probative of congressional intent and concluded that "congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Id.* at 814.

Respondents contend that the action was properly removed because there is federal jurisdiction over Petitioner's claims. Respondents rely on a recent Supreme Court case, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 125 S. Ct. 2363, 2368 (2005), in which the Court held that a state law claim is removable if it presents a disputed and substantial question of federal law which a federal court may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. The Court held that "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 2367. Further, the Court held that "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. ... [T]he presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." *Id.* at 2367-68. In addition, although not overturning *Merrell Dow*, the *Grable* Court specifically held that the absence of a federal private right of action is not determinative of the question of federal jurisdiction. *Id.* at 2366. Rather, the Court found that the absence of a private cause of action in federal court is still "evidence relevant to" whether federal question jurisdiction should extend to particular cases. *Id.*

The *Grable* Court found that removal to federal court was appropriate where the federal statute upon which the state claims were based lacked a private right of action. *Id.* at 2365. In doing so, however, the Court emphasized that federal concerns should guide lower courts tasked with considering whether to shift litigation from state to federal court. The Court stated that even where the state action discloses a contested and substantial federal question, the lower

7

court should be wary to find the claim qualifies for a federal forum if, after careful consideration, the lower court finds that such a shift would upset the balance between state and federal courts. *Id.* at 2367-68.

Here, the Court finds that the balance of factors weighs in favor of remand. First, the fact that under Ninth Circuit precedent, there is no federal private right of action under the disputed federal statute, although not determinative, weighs in favor of remand. Second, the fact that the state court has invested significant time and resources toward the resolution of the disputed issues at stake in this matter also weighs in favor of remand.[1] Lastly, this Court must construe the removal statute strictly and reject jurisdiction if there is any doubt regarding whether removal was proper. *Duncan*, 76 F.3d at 1485. Therefore, although the claims raise an issue of federal law, the Court finds that, in this case, removal would disturb the sound division of labor between state and federal courts. Petitioner's motion to remand is GRANTED.[2]

**C.     Petitioner's Request for Attorneys' Fees.**

Pursuant to 28 U.S.C. § 1447(c), Petitioner seeks an order from the Court requiring Respondents to pay Petitioner's costs and expenses, including attorneys' fees, incurred as a result of removal of this action. Because Respondents' removal was not "wrong as a matter of law," an award of fees and costs would not be appropriate here. *See Balcorta v. Twentieth Century-Fox Film Corp.,* 208 F.3d 1102, 1106 n.6 (9th Cir. 2002) (awarding attorneys' fees

---

[1] The state court decisions in *CHA v. Belshe* and *CHA v. DHS* held that the 20 percent exclusion methodology violated the Boren Amendment, 42 U.S.C. § 1396a(13)(A), which has since been repealed by § 4711 of Balanced Budge Act of 1997. In the case at bar, under 42 U.S.C. § 1396a(30)(A), payments are consistent with efficiency, economy, and quality of care if they bear a reasonable relationship to provider costs, unless there is some justification for the rates that do not substantially reimburse providers costs. *See Orthopaedic Hospital v. Belshe,* 103 F.3d 1491, 1499 (9th Cir. 1997). To the extent that the state court found that the 20 percent exclusion methodology was "arbitrary" and bore "no rational relationship to the efficiency and economy of the facility's operation," the state court has invested time and resources toward the resolution of the issue of whether the same methodology violates 42 U.S.C. § 1396a(30)(A). *Belshe,* No. 977772, Judgment dated June 16, 1999 at 12, 18-19.

[2] The Eleventh Amendment analysis is irrelevant because immunity applies to suits in both state and federal court. *Alden v. Maine*, 527 U.S. 706, 748 (1999).

8

when "when a defendant's removal, while 'fairly supportable,' was wrong as a matter of law").
Therefore, Petitioner's request for fees and costs is DENIED.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's motion to remand and DENIES Petitioner's request for costs and fees.  The case is remanded to the Superior Court for County of San Francisco.  The Clerk shall close this Court's file.

**IT IS SO ORDERED.**

Dated: September 8, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE